IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

    v.

JACINTO BRACMORT

:
:
:    Civil Action No. DKC 13-1257
      Criminal No. DKC 10-249-6
:
:
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is a motion filed by Petitioner Jacinto Bracmort ("Petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 406).[1]  Also pending are Petitioner's two motions to appoint counsel (ECF Nos. 407; 420), motion for reconsideration to obtain court documents (ECF No. 405), motion to receive a copy of the docket (ECF No. 436), and motion to expedite response (ECF No. 437).  The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6.  For the following reasons, the motion to vacate, set aside, or correct sentence will be denied; the motions to appoint counsel will be denied; the motion for reconsideration to obtain court documents will be denied; the motion to receive a copy of the docket will be granted; and the motion to expedite response will be denied as moot.

---

[1] All citations to electronic court filings refer to the docket in the criminal case.

**I. Background**

Petitioner was charged with one count of conspiracy to distribute and possess with intent to distribute 280 grams or more of cocaine base, a quantity of a mixture or substance containing a detectable amount of cocaine, and 100 grams or more of phencyclidine ("PCP"), in violation of 21 U.S.C. § 846. (ECF No. 256) (second superseding indictment).  The first superseding indictment, charging Petitioner and five co-defendants with conspiracy to distribute cocaine base and PCP between October 2009 and May 2010, was returned on June 2, 2010.  (ECF No. 24).[2] A bench warrant was issued for Petitioner (ECF No. 35), who was arrested and presented for an initial appearance on July 2, 2010 (ECF No. 67).  Due to Petitioner's health issues, a renewed initial appearance and detention hearing was held on July 6, at which he was ordered detained by agreement.  (ECF Nos. 72; 74). On August 29, 2011, following a five-day trial, a federal jury convicted Petitioner of one count of conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846.  (ECF No. 291).  The jury found that less than 28 grams of cocaine base and less than 100 grams of PCP were attributable to Petitioner. (*Id.*).  Petitioner was sentenced to 120 months of imprisonment

---

[2] A grand jury returned the operative second superseding indictment shortly before trial to revise the threshold drug quantities necessary for the conspiracy count to trigger enhanced penalties under 21 U.S.C. §§ 841(b)(1)(A), (B).  (ECF No. 256).

followed by five years of supervised release, the bottom of the sentencing guideline range.[3]  (ECF No. 359).  Judgment was entered on April 24, 2012.  (ECF No. 359).

Petitioner informed the court during his sentencing hearing of the errors he wished to raise regarding his conviction and sentencing, and accordingly, notice of appeal was sent to the United States Court of Appeals for the Fourth Circuit on April 25, 2012.  (ECF Nos. 361; 362).  On appeal, Petitioner argued: (1) the district court abused its discretion in denying his request for a jury instruction on multiple conspiracies; and (2) the district court erred in failing to make specific factual findings regarding the drug quantities attributable to him for sentencing purposes.  On December 13, 2012, the Fourth Circuit affirmed on all grounds, concluding "that the evidence adduced at trial established that Bracmort, cooperating witness Ricky Moore, and co-defendant Rico Toliver were part of a 'loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market[,]'" and therefore "the district court did not abuse its discretion in denying defense counsel's request to instruct the jury on

---

[3] Petitioner's final offense level was 26, and his criminal record placed him in Criminal History Category VI, providing a guideline range of 120-150 months imprisonment.  On October 7, 2015, the court reduced Petitioner's sentence to 100 months under 18 U.S.C. § 3582(c)(2).  (ECF Nos. 426; 427).

multiple conspiracies." *United States v. Bracmort*, 499 F.App'x 261, 262-63 (4th Cir. 2012) (quoting *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993)) (ECF No. 393-2).  The Fourth Circuit also concluded that the district court's reliance on the presentence report to support the factual finding of drug quantities relevant for sentencing did not constitute plain error, and that the court was not obligated to make express factual findings because the attributable drug quantities were greater than those found by the jury.  *Id.* at 263-64.  Following his direct appeal, Petitioner filed a handwritten motion "to dismiss the case [due] to the 180 rule."  (ECF No. 394).  Construing the motion as a motion for modification of sentence, the district court denied the motion (ECF No. 399), and instructed the clerk to provide forms and instructions for Petitioner to file a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

Petitioner has been represented by six attorneys.[4]  Court-appointed attorney William Arnold Mitchell, Jr. represented Petitioner at his renewed initial appearance and detention

---

[4]  Petitioner alleges that he was represented by seven attorneys, although only six are identified in the record. Petitioner explains in his reply that the seventh attorney, Richard Sumod, was retained by Petitioner prior to his arrest. Petitioner alleges that Mr. Sumod "stole [his] money" and he "never saw Mr. Sumod again." (ECF No. 413-1, at 1).  Be that as it may, Petitioner was subsequently provided with court-appointed counsel, and has not shown how Mr. Sumod's conduct could have prejudiced his defense.

hearing, but moved to withdraw shortly thereafter due to a conflict of interest with his representation of other clients, of which he learned upon reviewing the initial discovery in Petitioner's case. (ECF No. 80). Following an attorney inquiry hearing before Magistrate Judge William Connelly (ECF No. 81), Mr. Mitchell's motion was granted (ECF No. 89), and Pat M. Woodward was appointed (ECF No. 83). Mr. Woodward served as Petitioner's counsel for approximately five months, during which time Petitioner twice asked the court to remove Mr. Woodward as his counsel. (ECF Nos. 109; 112). Petitioner withdrew his first motion during an attorney appointment hearing. (ECF No. 110). Petitioner later renewed his motion, stating that Mr. Woodward did not communicate with Petitioner or his wife in a timely manner and that Petitioner did not feel comfortable with his representation. (ECF No. 112). In December 2010, Mr. Woodward was removed and Joseph Roll Conte was appointed. (ECF No. 127).

Mr. Conte served as Petitioner's counsel through the jury trial. Petitioner made multiple requests to have Mr. Conte removed as his attorney, alleging that Mr. Conte pressured him to accept a plea agreement and did not provide Petitioner with a copy of the discovery, allow him to review the wiretaps, or adequately communicate with him about his case. (*See, e.g.*, ECF No. 172). Four attorney inquiry hearings were held before

Magistrate Judge Charles B. Day prior to trial to address Petitioner's requests, at each of which Judge Day determined that it was not necessary to replace counsel. (ECF Nos. 165; 174; 188; 249). Shortly before trial began, Charles Jay Soschin entered his appearance to join Mr. Conte as trial counsel. (ECF No. 269).

One week after the jury verdict, Petitioner and co-defendant Rico Toliver, without the assistance of counsel, filed a "Notice to File Motion for New Trial." (ECF No. 298). Because the co-defendants were represented, they were instructed to file any motion through their attorneys. (ECF No. 300). Petitioner and Mr. Toliver responded: "[O]ur attorneys will not file what we want them to file. . . . Neither of them came to visit us until after the 14 days had expired. . . . Mr. Conte did not visit Mr. Bracmort at all." (ECF No. 308). Petitioner simultaneously filed a motion for a new trial and a motion to appoint counsel, and later again requested new counsel through correspondence to the court. (ECF Nos. 309; 310; 322).[5] Judge Connelly granted Petitioner's motion to appoint counsel after a hearing, and appointed Teresa Whalen. (ECF Nos. 323). Prior to his sentencing, Petitioner attempted to have Ms. Whalen removed, and an attorney inquiry hearing was held before Judge Connelly.

---

[5] Petitioner's motion for a new trial was denied at his sentencing hearing, as it did not raise any grounds that merited a new trial. (ECF No. 386, at 3:2-9).

(ECF No. 354).   Judge Connelly declined to appoint new counsel. Petitioner also made an oral motion to strike Ms. Whalen as his counsel during his sentencing hearing, which was denied. (ECF No. 357).   The court cited Judge Connelly's determination that there was no justification for replacing Ms. Whalen as Petitioner's attorney, and further noted that the record did not indicate that Ms. Whalen had failed to do anything that she appropriately should have done on Petitioner's behalf. (ECF No. 386, at 22-25).   Finally, the Fourth Circuit appointed Joshua Treem as counsel for Petitioner's appeal.  (ECF No. 364).

Petitioner filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on May 1, 2013. (ECF No. 406).   The government opposed (ECF No. 410), and Petitioner filed a reply (ECF No. 413), and an addendum (ECF No. 415). Petitioner has also filed two motions to appoint counsel (ECF Nos. 407; 420),[6] a motion for reconsideration to obtain court documents after an earlier motion to obtain his trial and sentencing transcripts was denied (ECF No. 405), and a motion to receive a copy of the docket for his case (ECF No. 436). Finally, Petitioner filed a motion to expedite a response to the pending motions.  (ECF No. 437).

---

[6] Petitioner previously requested the appointment of a lawyer for his post-conviction relief filings (ECF No. 398), which was denied because no matter was pending (ECF No. 400).

## I.   Standard of Review

Section 2255 requires a petitioner asserting constitutional error to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law[.]"   28 U.S.C. § 2255(a).   If the § 2255 motion, along with the files and records of the case, conclusively shows that the petitioner is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be summarily denied.   *See id.* § 2255(b).

## II.  Analysis

Petitioner brings the instant § 2255 motion alleging that he was denied effective assistance of counsel in violation of the Sixth Amendment and that the court erred in refusing to instruct the jury on multiple conspiracies.   (ECF No. 406).

### A. Ineffective Assistance of Counsel

The court understands Petitioner's motion to allege ineffective assistance of counsel on the following grounds: (1) the appointment of multiple attorneys in his case was *per se* prejudicial, and all of his attorneys failed to investigate his case, prepare for trial, or otherwise subject the case to meaningful adversarial testing; (2) Petitioner's attorneys

failed to negotiate or communicate a plea offer; (3) Petitioner's trial attorneys were not licensed to practice law in this court; (4) Petitioner was denied his right to testify, and his trial attorneys erred in not calling his character witnesses to testify; and (5) Petitioner's attorneys at sentencing and on appeal were ineffective. (*See* ECF No. 406-1).

Claims of ineffective assistance of counsel are governed by the well-settled standard adopted by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). To prevail on a *Strickland* claim, the petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland,* 466 U.S. at 688.

There is a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *Strickland,* 466 U.S. at 688–89; *Bunch v. Thompson,* 949 F.2d 1354, 1363 (4th Cir. 1991). Courts must assess the reasonableness of attorney conduct "as of the time their actions occurred, not the conduct's consequences after the fact." *Frye v. Lee,* 235 F.3d 897, 906 (4th Cir. 2000). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689. Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice could have resulted from some performance deficiency. *See id.* at 697. To demonstrate actual prejudice, Petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### 1.  Multiple Attorneys and Pre-Trial Defense

Petitioner first argues that having multiple attorneys throughout the proceedings was "highly unusual," and that "[w]ith a new attorney assigned to the Petitioner at every turn of the case," it was "impossible" for him to be competently represented. (ECF No. 406-1, at 11-12). Petitioner relies on *United States v. Cronic*, 466 U.S. 648 (1984), asserting that the number of attorneys he was appointed was effectively a denial of counsel. (*Id.* at 16). Representation by different attorneys during the pre-trial and trial, post-trial, and appellate phases of a case is not *per se* prejudicial. One of Petitioner's attorneys was replaced due to a conflict of interest, but the others were all replaced at Petitioner's own request. A criminal defendant cannot make repeated requests for new counsel in order to then use the granting of those requests as the sole basis for a collateral attack on his conviction. Moreover,

10

although the number of attorneys appearing in this case may appear high, there was continuity in Petitioner's representation. Mr. Mitchell and Mr. Woodward represented Petitioner for brief periods of time at the beginning of his case. It was Mr. Conte, however, who represented Petitioner for more than ten months, through plea negotiations, pre-trial motions,[7] and trial. Mr. Soschin appeared on Petitioner's behalf only with Mr. Conte as additional trial counsel. Ms. Whalen represented Petitioner for the six months following the trial through sentencing, and Mr. Treem was Petitioner's only appellate counsel. Petitioner has not shown any errors or prejudice that resulted merely from the replacement of his attorneys at his request.

Petitioner further argues that his attorneys failed to investigate his case or prepare for trial, alternatively attributing this failure to the lack of continuity in representation (*id.* at 11), or to his trial counsels' belief of his guilt (*id.* at 4, 10). He also frames this failure to investigate as a violation of his attorneys' duty of loyalty, a conflict of interest, and a violation of their duty to consult

---

[7] Prior to the trial, Mr. Conte filed numerous motions on Petitioner's behalf, including a motion for a detention hearing (ECF No. 145), a motion to adopt co-defendants' motions to suppress electronic surveillance (ECF No. 169), and two motions to sever Petitioner from trial with his co-defendant (ECF Nos. 170; 261).

with him.[8]   (*Id.* at 10).   Petitioner does not identify any
specific investigation that was deferred, but references a
failure to "interview[] . . . witnesses to rebuff the
prosecution." (ECF Nos. 406-2, at 1; 406-1, at 11).   In an
affidavit attached to the government's opposition, Mr. Conte
avers, "I have no knowledge of any investigation Mr. Bracmort is
referring to.   As far as I recall I am not aware of any
investigation that was not performed.   I never made any
statement to Mr. Bracmort that I would not investigate the case
because he was guilty." (ECF No. 410-4 ¶ 6).   He further denies
that he told Petitioner he would not prepare for trial, and
states, "I spent many hours preparing for this trial reviewing
the evidence, preparing cross-examination, *voir dire*, jury
instructions and closing argument.   Because the *Jencks* material
was provided late, I filed a motion to continue the trial in
order to have more time to prepare." (ECF No. 410-4 ¶ 7).
Petitioner has not shown there was any investigation his

---

[8]   Petitioner also alleges that his attorneys did not
communicate with him about the evidence in his case and refused
to provide Petitioner with discovery materials.   He states that
Mr. Woodward "promised discovery, but failed to deliver it" (ECF
No. 406-1, at 3), and that Mr. Conte "also promised to provide
discovery but never provided the material" (*id.* at 4).   Mr.
Conte affirmed that all discovery materials were reviewed with
Petitioner (ECF No. 410-4, at 2), and in his affidavit attached
to his reply Petitioner acknowledges that Mr. Conte did show him
the discovery (ECF No. 413-1, at 3).   He argues instead that he
was not given sufficient time to review the materials. (*Id.*).
Petitioner has not demonstrated unreasonable performance, and
has not shown any prejudice on this ground.

attorneys unreasonably failed to do, or how such error would have led to a different result in the proceedings.

Petitioner also alleges that he "met [Mr. Soschin] for the first time at the defense table, just before he made his opening statement," and therefore argues that Mr. Soschin had no time to prepare for trial. (ECF No. 406-2, at 2). In his affidavit, Mr. Conte disputes this, stating that "Mr. Soschin met with Mr. Bracmort, with me present, at least once prior to trial." (ECF No. 410-4 ¶ 9). Whether or not Petitioner met Mr. Soschin prior to trial, Mr. Conte was lead counsel at trial, and had been Petitioner's counsel for more than eight months. Petitioner has not shown how the assistance of an additional attorney at trial constituted ineffective assistance of counsel.

Petitioner also raises the failure of his attorneys to file pre-trial motions for bond or for a speedy trial. (ECF Nos. 406-1, at 4; 406-2, at 3). The failure to file a bond motion does not show deficient performance, *see United States v. Burns*, 990 F.2d 1426, 1437 (4th Cir. 1993), but this allegation is belied by the record as well. Petitioner was detained by agreement at his renewed initial appearance (ECF No. 74), Mr. Conte did move for a detention hearing after his appointment (ECF No. 145). Judge Day denied Petitioner's motion for release at a hearing on February 8, 2011 (ECF No. 154), and again denied pre-trial release at another bond hearing on April 26 (ECF No.

173). Petitioner has also failed to allege any prejudice resulting from the delay in his trial.

Petitioner has not demonstrated that the conduct of his attorneys prior to trial fell below an objective standard of reasonableness, nor has he demonstrated that any alleged errors or the fact of his representation by multiple attorneys prejudiced the defense such that there is a reasonable probability that the result of the proceeding would have been different.

### 2. Failure to Negotiate or Communicate Plea Agreements

Petitioner avers that he "was never presented with a plea agreement, which [he] would have been amendable to." (ECF No. 406-2, at 2). He alleges that Mr. Woodward did not communicate a plea offer to him, and that "with a parade of ineffective attorneys, there was never a consolidated effort to present the options to the Petitioner so that a choice could be made." (ECF No. 406-1, at 12). Petitioner later admits, however, that he did participate in at least one proffer session with Mr. Conte and the government. (ECF No. 413-1, at 1, 4 (referring to "[e]ach time" Petitioner met with counsel and the government in "proffer sessions"); see also ECF Nos. 410-4, at 2 (Affidavit of Joseph R. Conte) (averring that counsel and Petitioner participated in three "debriefing/proffer sessions with the assigned U.S. Attorneys"); 172, at 1-2 (Letter from Petitioner

14

to court dated April 22, 2011) (noting discussion with counsel regarding plea offer and participation in "3 or 4" meetings with the government)).  Petitioner argues instead in his reply that Mr. Conte "would team up with the government" against him and "t[h]reatened" him with "life in prison" if he did not accept the plea offer.  (ECF No. 413-1, at 1, 4).  Petitioner also states that the plea offers expired before he could act on them or that he was not fully apprised of the offers until they expired.  (ECF No. 413, at 3).

   In addition to the alleged failure to communicate a plea offer, Petitioner alleges ineffective assistance on the ground that the decision he made to go to trial resulted in a longer sentence, and "[a]t least one of his six pretrial attorneys should have known that '[Defendants] who do take their case to trial and lose receive longer sentences than even Congress or the prosecutor might think appropriate, because the longer sentences exist on the books largely for bargaining purposes.'" (ECF No. 406-1, at 13 (alteration in original) (quoting *Missouri v. Frye*, 132 S.Ct. 1399, 1407 (2012)).  He argues that he suffered prejudice because he "was not allowed the opportunity to have a reasonable plea negotiated." (*Id.*).  Petitioner also alleges that he "sought to come to an agreement with AUSA regarding his minor involvement, as a drug user and not one trafficking in drugs," and that he "wanted to save prosecutorial

resources by not going to trial for what he felt what should have been a simple possession charge[.]" (*Id.* at 12).

Upon receipt of a plea offer, defense counsel should communicate the offer in a timely and accurate manner and advise their client of the alternatives and factors that should be weighed, although the ultimate decision of whether to accept or reject a plea agreement must be made by the defendant. *Jones v. Murray*, 947 F.2d 1106, 1110–11 (4th Cir. 1991). As one court recently explained:

> In the context of plea negotiations, an attorney's failure to communicate a formal plea offer to a criminal defendant falls below an objective standard of reasonableness. *See Missouri v. Frye*, 132 S.Ct. 1399, 1410 (2012). Because the negotiation of a plea bargain is often the most important for the defendant in terms of the ultimate sentence he receives, defense counsel has the obligation to communicate formal offers from the prosecution. *Id.* at 1407–08.

*Carillo-Morales v. United States*, 952 F.Supp.2d 797, 803–04 (E.D.Va. 2013).

The government's first plea offer was communicated to Mr. Woodward on November 30, 2010. (ECF Nos. 410, at 1–2; 410-1, at 1). Even assuming that Mr. Woodward failed to communicate the plea offer, however, Petitioner cannot show prejudice here. Any failure to communicate was cured when Mr. Conte was appointed in Mr. Woodward's place and communicated the offer, which had been left open beyond the expiration date. (*See* ECF No. 410, at 9,

17).   Mr. Conte was even able to negotiate more favorable terms for Petitioner in the second, March 16, 2011, plea offer.   (*See* ECF No. 410-3, at 4).   Petitioner has not established that he was prejudiced by Mr. Woodward's alleged failure to communicate the plea offer.

Petitioner offers conflicting arguments regarding Mr. Conte's conduct during the plea negotiations.   He alleges that he was improperly pressured to accept the plea agreement (*see* ECF No. 413-1, at 1, 3-4), but also argues that his counsel was deficient for failing sufficiently to explain the possibility of receiving a longer sentence at trial than was offered in the plea agreement (*see* ECF No. 406-1, at 13).

Mr. Conte's assistance to Petitioner was objectively reasonable.   Petitioner characterizes Mr. Conte's advice regarding a possible life sentence as a threat, but Petitioner was, in fact, facing the possibility of mandatory sentences and a life sentence due to his prior felony drug convictions.   The initial plea offer recommended a final offense level of 25 or 34 (ECF No. 410-1, at 4), while the second plea offer counsel negotiated was for a final offense level of 23, for which the guideline sentence is 92-115 months imprisonment (ECF No. 410-3, at 4).   Mr. Conte communicated the offers, correctly conveyed to Petitioner the likelihood of his conviction and the consequences of pleading not guilty, and negotiated a second, more favorable

17

plea offer for Petitioner.   That he may have advised or even
urged Petitioner to accept the plea offer does not show that his
assistance was unreasonable, nor could this advice have resulted
in prejudice given that Petitioner decided to reject the plea
offer.   *See Carillo-Morales*, 952 F.Supp.2d at 804-05 (finding
that attorney "went above and beyond his constitutional
requirements" by "continually urging Petitioner to accept the
government's plea agreement," and denying § 2255 motion in case
where Petitioner had rejected attorney's advice to accept the
plea).

        Moreover, Petitioner cannot show prejudice here because he
has not demonstrated a reasonable probability that he would have
accepted any plea offer.   "In the context of plea negotiations,
the prejudice element turns on whether counsel's performance
affected the defendant's final decision to accept or reject a
plea offer."   *Id.* at 806-07 (citing *Hill v. Lockhart,* 474 U.S.
52, 59 (1985)).   The petitioner "must demonstrate a reasonable
probability that (1) 'they would have accepted the earlier plea
offer had they been afforded effective assistance of counsel,'
and (2) 'the plea would have been entered without the
prosecution canceling it or the trial court refusing to accept
it[.]'"  *Merzbacher v. Shearin,* 706 F.3d 356, 366 (4th Cir. 2013)
(quoting *Frye*, 132 S.Ct. at 1409).   Petitioner does not address
the second requirement at all, and his allegations that he was

18

amenable to a plea are contradicted by the record and even by his statements in this motion.   Petitioner declares that his attorney and the government attempted to "trick" or "scare" him into accepting the plea agreement, but that he "would not allow the government or Mr. Conte to scare him into plea[d]ing out to something petitioner didn't do."   (ECF No. 413-1, at 4). Petitioner suggests that he might have pleaded guilty to a drug possession charge, but he does not even allege, much less sufficiently demonstrate, that he would have admitted his guilt to the conspiracy crime with which he was charged and convicted and accepted a plea agreement were it not for the allegedly deficient performance of his attorney.

### 3.   Unauthorized Practice of Law

Petitioner contends that his trial attorneys, Mr. Conte and Mr. Sochin, rendered ineffective assistance by representing him in the United States District Court for the District of Maryland, when they "were not members of the Maryland[] [B]ar Association, and weren't licensed to practice law in the State at the time of the trial[.]"   (ECF No. 406-1, at 10).

The court appointed Mr. Conte, who is a private attorney admitted to this district's Criminal Justice Act ("CJA") panel of attorneys eligible for appointment in federal criminal cases. (ECF No. 127).   In order to be admitted to the CJA panel, Mr. Conte must have been in good standing in the federal bar of this

district.   Whether or not he is barred by the state of Maryland
has no bearing on his ability to practice in federal district
court, and publicly available records reflect that Mr. Conte has
been a member of the district court bar since 1989.   Mr.
Soschin, also a private attorney, filed an Entry of Appearance
to assist in the trial representation of Petitioner pursuant to
Local Rule 201.1.   (ECF No. 269).   Local Rule 201.1 provides:

> A defendant in a criminal case may be
> represented by (1) a member of the Bar of
> this Court or (2) an attorney who certifies
> that he or she is (a) a member in good
> standing of the bar of the highest court of
> any state or the District of Columbia and
> (b) familiar with Federal Rules of Criminal
> Procedure, the Federal Rules of Evidence,
> the Federal Rules of Appellate Procedure,
> and the Local Rules of this Court.

Local Rule 201.1.   Mr. Soschin affirmed in writing that he is a
member in good standing of the bar of the highest state court of
Virginia and the District of Columbia in his Entry of
Appearance.   (ECF No. 269).   Accordingly, both Mr. Conte and Mr.
Soschin were authorized to represent Petitioner at trial.

### 4.   Denial of Right to Testify and Trial Defense

Petitioner contends that his trial counsel was ineffective
because counsel did not allow him to testify.   He asserts in his
supporting affidavit, "Not only did Mr. Conte refuse to initiate
the suppression of my priors, but they refused to let me testify
on my own behalf, which I begged him over and over to allow it."
(ECF No. 406-2, at 2).

To be sure, a defendant in a criminal trial has a constitutional right to testify on his own behalf. *See Rock v. Arkansas*, 483 U.S. 44, 51–53 (1987) (holding that the right to testify is found in the Fifth, Sixth, and Fourteenth Amendments); *see also* 18 U.S.C. § 3481 ("In trial of all persons charged with . . . offenses against the United States . . . the person charged shall, at his own request, be a competent witness."). A defendant's attorney has an obligation to ensure the defendant is informed of his right to testify, *Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998), and if counsel fails to fulfill that obligation, the right to effective assistance of counsel is implicated and counsel may be evaluated under the test set forth in *Strickland*, *Gilchrist v. United States*, No. DKC 08-1218, 2012 WL 4520469, at *19 (D.Md. Sept. 27, 2012). Failure to inform a defendant of his right to testify is different, however, than advising a defendant not to testify. "Absent evidence of coercion, legal advice concerning the defendant's right to testify does not constitute [ineffective assistance of counsel]." *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002) (alternation in original) (quoting *Reyes-Vejerano v. United States*, 117 F.Supp.2d 103, 108–09 (D.P.R. 2000)).

Petitioner does not allege that he was not informed of his right to testify, but rather that his counsel advised him against testifying and prevented him from testifying. Where, as

21

here, counsel advises a defendant on the benefits and
disadvantages of testifying, regardless of whether the benefit
of hindsight shows the advice to be erroneous, that strategic
advice is inappropriate for after the fact second-guessing. *See
Hutchins v. Garrison*, 724 F.2d 1425, 1436 (4th Cir. 1983)
("Counsel's advice not to testify is a paradigm of the type of
tactical decision that cannot be challenged as evidence of
ineffective assistance."). The government argues that
Petitioner's counsel "strongly recommended that Petitioner not
testify due to the impeachment he would face and introduction of
myriad convictions for crimes of moral turpitude."[9] (ECF No.
410, at 15). Moreover, Petitioner was questioned about his
decision not to testify during the trial, and affirmed that it
was his choice not to testify:

> MR. CONTE: Your Honor, both Mr. Soschin and
> myself have discussed with Mr. Bracmort
> whether he wishes to testify, and he's taken
> that under advisement during the entire
> trial, and he has advised us that he will
> not testify in this matter.
>
> THE COURT: Okay. Mr. Bracmort, is that also
> correct?
>
> DEFENDANT BRACMORT: Yes, Your Honor.

(ECF No. 336, at 54:6-13). Regardless of the reason for
counsel's advice, it is clear that Petitioner was informed of

---

[9] Indeed, it is also unclear on what basis Petitioner
believes Mr. Conte should have moved to suppress his prior
convictions other than by advising Petitioner not to testify and
expose himself to impeachment.

his right to testify and had the opportunity to testify, but chose not to do so.

Petitioner also takes issue with counsels' decision not call certain witnesses at trial. At trial, Petitioner addressed the court on this issue:

> DEFENDANT BRACMORT: I want to have on record that I did want my witnesses to come, but the Commonwealth attorney said we're not going to use my witnesses, and I did want my witnesses to come, too. But I just wanted to have that on the record.
>
> THE COURT: Okay. There were witness names I had been given ahead of time.
>
> DEFENDANT BRACMORT: Right.
>
> THE COURT: But I was advised up here at the bench that the decision had been made by you and your defense attorneys not to call any of them at this time.
>
> DEFENDANT BRACMORT: That decision wasn't made by me. I wanted to. That was made by my attorney.

(*Id.* at 55:24-56:11). The court explained the difference between Petitioner's decision of whether to testify and his attorneys' strategic decision of whether to call witnesses, and Mr. Conte clarified that the decision not to call Petitioner's character witnesses was made to prevent the jury from learning of Petitioner's prior convictions. (*See id.* at 56:14-60:5). Following this discussion, Petitioner indicated that he understood the decision. (*Id.* at 60:15-21). Petitioner has not shown that his attorneys' conduct was unreasonable, and has made

only an unsupported allegation that the outcome of the trial would have been different if he and his witnesses had testified. Petitioner has failed to demonstrate ineffective assistance of counsel on these grounds.

### 5. Assistance of Counsel at Sentencing and on Appeal

Sentencing is a critical stage of a criminal prosecution at which defendant has a right to effective assistance of counsel. *See United States v. Burkley*, 511 F.2d 47, 51 (4th Cir. 1975); *Kratsas v. United States*, 102 F.Supp.2d 320, 329 (D.Md. 2000). Following the trial, Mr. Conte and Mr. Soschin were replaced by Ms. Whalen at Petitioner's request. (ECF Nos. 323; 325; 327). Petitioner argues that all of his attorneys were deficient for failing to object to the drug-quantity determination of the presentence report, which was adopted by the court at the sentencing hearing.[10]   (ECF No. 406-1, at 11).   Petitioner alleges that he "presented Ms. Whalen with a list of objections and she refused to raise any of them," after he reviewed the presentence report. (ECF Nos. 406-2, at 2; 406-1, at 6).   He also "believes that had this honorable court considered his objections, it would have had the reason to give the Petitioner a downward departure due to his most minor role in the charged conspiracy." (ECF No. 415, at 2).

---

[10] There is no basis for Petitioner's contention that all of his attorneys were responsible for objecting to the presentencing report.  Accordingly, this allegation is discussed only as it relates to Ms. Whalen's conduct.

Ms. Whalen did object to the base offense level calculations in the revised presentence investigation report on the basis that the jury found less than 28 grams of cocaine base and less than 100 grams of PCP attributable to Petitioner, as noted in the second addendum to the presentence report in this case. In response, the probation office calculated the base offense level at a quantity within the jury's findings, and found that the offense level was unchanged. The court's adoption of the presentence report's factual findings was challenged on direct appeal, and the Fourth Circuit affirmed, noting the distinction between the jury's findings under a reasonable doubt standard, relevant to Petitioner's exposure to enhanced statutory sentencing provisions, and the court's analysis of the drug quantities attributable to him under a preponderance of the evidence standard, relevant to sentencing. *Bracmort*, 499 F.App'x at 264 (citing *United States v. Young*, 609 F.3d 348, 357 (4th Cir. 2010)). To the extent Petitioner is attempting to challenge the Fourth Circuit's decision (*see* ECF No. 415, at 1), he cannot do so on a § 2255 motion. If Petitioner is instead alleging that his attorney's conduct was deficient because she did not challenge the factual findings of the presentence report themselves, he has not put forth any grounds for challenging those findings that reasonably should

25

have been raised, or that would have affected the outcome of sentencing.

Ms. Whalen also did argue at sentencing that Petitioner was a minor or minimal participant and entitled to a role adjustment pursuant to U.S.S.G. § 3B1.2(b) (ECF Nos. 342, at 2-5; 386, at 6:16-8:23), and further argued for a sentence below the sentencing guideline range based on Petitioner's history and characteristics (ECF Nos. 342, at 5-7; 386, at 17:5-21:10). The court considered these arguments, but found that a further role reduction was inappropriate given that Petitioner's offense level was based only on the drug quantities Petitioner personally had handled or attempted to broker, rather than the higher quantities involved in the conspiracy that were reasonably foreseeable to him. (ECF No. 386, at 12:22-14:17). Accordingly, Petitioner has failed to demonstrate that Ms. Whalen's representation at sentencing fell to the level of deficient performance.

Finally, Petitioner alleges that his appellate counsel, Mr. Treem, "threw up a shallow effort" after Petitioner would not pay him additional money for his representation. (ECF No. 406-1, at 6-7, 14). This allegation is unsupported, and Mr. Treem did represent Petitioner on appeal. The only error in his representation that Petitioner alleges is that Mr. Treem referred to the jury's verdict as an "acquittal." (*Id.* at 11).

Mr. Treem characterized the jury's finding that Petitioner was not responsible for the higher drug quantities necessary for enhanced sentencing as an acquittal in order to argue that the court considered acquitted conduct during sentencing, and therefore had been required to make specific factual findings. Petitioner has not met either prong of ineffective assistance under *Strickland*.[11]

### B. Jury Instruction on Multiple Conspiracies

Petitioner separately claims that the court erred in refusing to instruct the jury on multiple conspiracies. The Fourth Circuit affirmed the decision to deny a jury instruction on multiple conspiracies, finding that "the trial evidence established a single conspiracy rather than multiple smaller ones," and accordingly holding that denying the request was not an abuse of discretion. *Bracmort*, 499 F.App'x at 262-63. Because the Fourth Circuit decided this issue on direct appeal, it cannot be relitigated here.

---

[11] To the extent Petitioner is claiming that the failure to appoint counsel to pursue rehearing en banc or certiorari to the Supreme Court was a denial of counsel (ECF No. 406-1, at 7), a defendant cannot be deprived of the effective assistance of counsel where there is no constitutional right to counsel, and there is no Sixth Amendment right to counsel for discretionary review of a conviction. *See Wainwright v. Torna*, 455 U.S. 586, 587 (1982); *Ross v. Moffitt*, 417 U.S. 600, 617 (1974); *White v. United States*, No. 7:08CR54, 2013 WL 1497579, at *3 (W.D. Va. Apr. 11, 2013).

## III. Remaining Motions[12]

### A. Motion to Appoint Counsel

Petitioner has filed two motions for the appointment of counsel. (ECF Nos. 407; 420). Pursuant to 18 U.S.C. § 3006A (a)(2)(B), a petitioner seeking relief under § 2255 may be appointed counsel "[w]henever required." Here, neither discovery nor a hearing is necessary, *see* Rules Governing Section 2255 Proceedings for the United States District Courts R. 6(a), 8(c) (2010) (counsel should be appointed when a hearing or discovery is required), and Petition has adequately set forth and supported his grounds for relief. Under these circumstances, the interests of justice do not require appointment of counsel, and Petitioner's motions will be denied.

### B. Motion for Reconsideration to Obtain Court Documents

The court denied Petitioner's initial motion to obtain copies of his trial and sentencing transcripts (ECF No. 403), because Petitioner failed to provide a specific explanation as to why those court documents were necessary and because he had not filed a § 2255 motion at the time of his initial request. (ECF No. 404). Petitioner now argues in his pending motion for reconsideration, similarly filed prior to his § 2255 motion, that he has shown a particularized need for the transcripts and

---

[12] In addition to the motions discussed below, Petitioner filed a motion to expedite a ruling on his pending motions. (ECF No. 437). This motion will be denied as moot.

requests free transcript copies pursuant to 28 U.S.C. § 753(f).
(ECF No. 405).

As noted in the previous denial, § 753(f) provides, in relevant part, that "[f]ees for transcripts furnished in . . . habeas corpus proceedings to persons allowed to sue, defend, or appeal in forma pauperis, shall be paid by the United States out of moneys appropriated for those purposes," but only "if the trial judge or a circuit judge certifies that the suit . . . is not frivolous and that the transcript is needed to decide the issue presented by the suit[.]" As the Fourth Circuit has explained:

> It is settled in this circuit that "an indigent is not entitled to a transcript at government expense without a showing of need, merely to comb the record in hopes of discovering some flaw." *United States v. Glass*, 317 F.2d 200, 202 (4th Cir. 1963); *accord United States v. Shoaf*, 341 F.2d 832 (4th Cir. 1964).

*Jones v. Superintendent, Va. State Farm*, 460 F.2d 150, 152 (4th Cir. 1972); *see also United States v. Hamlett*, 128 F.App'x 320, 321 (4th Cir. 2005) (affirming denial of transcript request where petitioner "failed to establish why she cannot, without copies of the transcripts, set forth in summary form the facts in support of her claim," as required by the Rules Governing Section 2255 Proceedings R. 2(b)).

Petitioner provides no explanation for why transcripts are needed to set forth the facts of the case, but rather sets forth

the facts supporting his § 2255 claim in his motion for reconsideration to obtain court documents. (ECF No. 405, at 1-5). He similarly set forth those facts in his subsequent § 2255 motion. (ECF No. 406-1, at 2-7). Free copies of his transcripts are thus unnecessary. Accordingly, Petitioner's motion for reconsideration to obtain court documents will be denied.

### C. Motion to Receive Docket for Case

Petitioner has also moved to receive a copy of the docket sheet. (ECF No. 436). Petitioner previously requested copies of the docket sheet through correspondence to the court. (ECF Nos. 416; 421). In response, copies of the docket were sent to Petitioner, care of the wardens of the facilities in which he was housed. (ECF Nos. 417; 418; 422; 423). Petitioner's motion will similarly be granted, and a copy of Petitioner's docket sheet shall be mailed to the Warden of his present place of confinement, so that access to the criminal docket sheet can be made available to Petitioner in accordance with prison policy and procedures.

### IV. Conclusion

For the foregoing reasons, Petitioner Jacinto Bracmort's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be denied.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003). Upon review of the record, the court finds that Petitioner does not satisfy the above standard. Accordingly, the court will decline to issue a certificate of appealability on the issues which have been resolved against Petitioner.

A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge